UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IMAGE PRODUCTS, INC.,

       Plaintiff,

v.                       CASE No. 8:06-CV-214-T-23TGW

MINI VACATIONS, INC.,

       Defendant.

_____

REPORT AND RECOMMENDATION

       This cause came on to be heard upon the plaintiff's Amended Motion for Court's Final Default Judgment (Doc. 45). The defendant has not filed an opposition to this motion, or otherwise appeared in this case. The plaintiff has established damages of $224,451.89 resulting from the defendant's failure to honor travel vouchers purchased by the plaintiff. I therefore recommend that a default judgment be entered against the defendant in that amount.

I.

       The plaintiff, Image Products, Inc., is a North Carolina corporation that provides loyalty and incentive programs to its clients in the banking and insurance industries. One such incentive program involved banks

giving away travel vouchers for free vacations to attract new customers.  For example, the "Choose Your Trip" travel vouchers allowed the customer to select a cruise, an all-inclusive resort stay, or a hotel stay (Doc. 1, Ex. A).

From June 2004 through January 2006, the plaintiff purchased from the defendant approximately 60,000 travel vouchers for such an incentive program, which were then sold to its client banks who gave them to their customers (Doc. 1, Ex. B, ¶¶ 4, 6).  Pursuant to the parties' contract, the defendant was responsible for redeeming the travel vouchers, which included making the travel arrangements and purchasing the travel (Doc. 1, Ex. B, ¶¶ 7-8).[1]

On or about January 31, 2006, the plaintiff received telephone calls from two bank customers that the defendant was not honoring the travel certificates (Doc. 1, Ex. B, ¶9; Ex. C, ¶4).  The plaintiff contacted the defendant, who stated that it was not financially able to honor the outstanding travel vouchers and certificates (Doc. 1, Ex. C, ¶8).

In response, the plaintiff made new travel arrangements for these travel voucher holders.  Thus, it purchased cruises for them directly from

_____

[1]After selecting their choice of travel, the customer sends the travel voucher to the defendant, who was supposed to make the arrangements for the selected travel and send to the customer a "live certificate" for their vacation.  The customer could also pay to the defendant a fee to upgrade their travel or extend the length of stay (Doc. 1, Ex. B, ¶8).

cruise lines or paid another travel vendor to honor the travel vouchers (Doc. 1, Ex. B, ¶10; Ex. C, ¶5). Further, the plaintiff refunded the value of certificates to client banks and travel certificate holders whose vouchers had expired during this process.

On February 6, 2006, the plaintiff filed a lawsuit against the defendant, alleging breach of contract and fraud arising from the defendant's failure to redeem the travel vouchers (Doc. 1). It also filed a motion for temporary restraining order, which was granted (Doc. 6). That order directed the defendant, among other things, to return vouchers in its possession to the plaintiff and provide it with customer contact information. The restraining order was subsequently converted into a preliminary injunction (Doc. 14).

The defendant has not answered the complaint or otherwise appeared in this case.[2] Consequently, upon the plaintiff's motion (Doc. 19), a default was entered against the defendant on March 22, 2006 (Doc. 25).

The plaintiff subsequently moved for the entry of a default judgment pursuant to Rule 55(b), F. R.Civ. P. (Docs. 37, 45).[3] In its amended motion, the plaintiff requests a judgment in the amount of $324,839.22 (Doc.

---

[2]Michael Burke, president of the defendant corporation, made a limited appearance in his personal capacity to respond to a contempt motion (see Docs. 21, 30, 35).

[3]This is an amended motion. The original motion sought liquidated and unliquidated damages of several millions of dollars (see Doc. 37).

48, p. 10). This includes the cost of alternative travel arrangements for voucher holders and expenses related to locating these customers and producing new vouchers (id. at pp. 6-8, Exs. A-L). This sum also includes attorneys' fees and litigation costs, such as surveillance of the defendant and lawsuit-related transportation, lodging, and meals for the plaintiff's representatives (id. at Exs. A, N-S). The motion was referred to me for a report and recommendation if it is to be granted, or for disposition if it is to be denied (Doc. 46).

A hearing on the motion was held on February 7, 2007, at which the plaintiff and its counsel appeared (see Doc. 51). There was no appearance by the defendant. At the hearing, I stated that travel purchases for customers holding the defendant's unredeemable vouchers and related expenses are clearly recoverable damages caused by the breach of contract (id.). However, I told the plaintiff that I was skeptical that it could recover attorneys' fees and litigation costs (id.). Importantly, the plaintiff did not assert in its memorandum a legal basis for their recovery. Rather, plaintiff's counsel stated at the hearing that they would probably be recoverable under the common law fraud count of the complaint. However, fraud is not evident, and I would be disinclined to award damages for a claim that lacks evidentiary

support. Therefore, I explained to the plaintiff that it would need to submit a legal memorandum setting forth the legal basis for recovery of attorneys' fees and litigation expenses that it has not demonstrated are recoverable damages.

During the hearing I recessed to allow the plaintiff and counsel an opportunity to discuss this issue. The plaintiff decided not to press recovery of those questionable items in order to obtain an expedited ruling on its motion. Thus, the plaintiff is seeking entry of a judgment by March 13, 2007, the time scheduled for a bankruptcy hearing for the defendant's president, Michael Burke, in an attempt to recover its damages from him.[4] The submission of an additional memorandum followed by research on these issues by the court would have made it less likely to receive a judgment by that date.

Therefore, the plaintiff specified at the hearing that is not pressing recovery for attorneys' fees or litigation costs for lodging, ground transportation, food, or surveillance of the defendant (id.). Further, it reduced its request for airline transportation from $84,131.44 to $25,954.20, which comprises only airline expenses for traveling to client banks to replace the

---

[4]The plaintiff will be seeking to pierce the corporate veil in order to recover its damages from Burke.

defendant's travel vouchers (id.).  This reduces the requested judgment to $224,451.89.

II.

Pursuant to Rule 55(b), F.R.Civ.P., after entry of a default, a party may seek the entry of a default judgment for the amount of the damages caused by the defaulting party.

As indicated, the defendant indisputably breached its contract with the plaintiff when it failed to honor travel vouchers purchased by the plaintiff.  Further, the plaintiff has suffered substantial financial detriment as a result of this breach, spending (so far) over two hundred thousand dollars to make good on the vouchers.  In this connection, the plaintiff purchased for voucher holders cruises directly from cruise lines, replaced the defendant's vouchers with new travel vouchers purchased from another company, or gave refunds in an amount equal to the value of the travel voucher.

Thus, the plaintiff presented evidence that it paid the following amounts to cruise lines so that customers with unredeemable vouchers from the defendant could get their free vacations as promised (see Doc. 48, pp. 4-5; Exs. A, B, C, D):

| | |
|---|---|
| Carnival Cruises: | $20,192.92 |
| Imperial Majesty Cruise Lines: | $21,177.30 |

Royal Caribbean Cruises:          $30,321.12

Total direct to cruise lines:        $71,691.34

Furthermore, the plaintiff presented evidence that it paid $84,425.50 to Perfect Travel Promotions, a company similar to the defendant, to purchase new travel vouchers and certificates for customers in possession of the defendant's unredeemable vouchers (id. at pp. 5-6; Ex. E).  Moreover, the plaintiff presented evidence that it refunded $29,441.83 to customers and banks that paid money to the defendant for travel vouchers that the defendant failed to honor (id. at p. 6; Ex. F).

The plaintiff, as indicated, also incurred expenses related to locating customers in possession of the defendant's travel vouchers and arranging for them to receive new vouchers.  Thus, the plaintiff presented evidence that it spent $7,030.13 for printing and mailing new certificates to these voucher holders, $522.60 for additional telephone lines to communicate with these customers, $225.00 for incorporating a new company to deal with the issues resulting from the breach, $3,453.79 for data entry of voucher holders' contact information, $1,507.50 for temporary workers to contact holders of the defendant's vouchers, and $200.00 for an expert to attempt to

decode a database from the defendant containing client information (id. at pp. 7-8, Exs. A, G, H, I, J, K, L). These expenses totaled $12,939.02. Finally, the plaintiff presented evidence that it spent $25,954.20 for air travel for representatives to go to client banks and replace the defendant's unredeemable travel vouchers (id. at Exs. M, A).[5] These are also recoverable damages related to the defendant's breach of contract.

In sum, the plaintiff has established damages totaling $224,451.89 that were directly and reasonably incurred as a result of the defendant's breach of contract. Importantly, the defendant has not challenged the sufficiency of this evidence or otherwise objected to recovery of any of these damages.

IV.

For the foregoing reasons, I recommend that the plaintiff's Amended Motion for Court's Final Default Judgment (Doc. 45) be granted, and that final default judgment be entered in favor of the plaintiff, and against the defendant, in the amount of $224,451.89.

---

[5] Specifically, this airfare is for Brenden Donovan and Jeffrey Petro in the amounts of $6,826.40 and $16,890, respectively (Doc. 48, Ex. M, p. 2), and seven other airline tickets totaling $2,237.80 (id. at Ex. A).

Respectfully submitted,

DATED: FEB. 13, 2007

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).